Consolidated Realty Co.
vs.
Jacob Ernstof, et al.

No. 71678

June 26, 1928.

CAPOTOSTO, J. In an action on a promissory note for $18,000 the plaintiff recovered a verdict of $22,142.40. The defendants move for a new trial upon the usual grounds.

This case takes us back to the hectic days of 1925-1926 when speculation ran rampant and caution was ruthlessly disregarded in the attempt to become millionaires over night by scrambling for Florida real estate. The rights of the parties cannot be determined by what ordinarily would happen at a time of conservatism and prudence. The obligations assumed in a period of reckless speculation must of necessity be determined in the light of surrounding conditions. In a prudent investment the investor takes reasonable precautions to see that he actually gets what he intends to buy. When the spirit of speculation is the impelling motive, the speculator relies more on chance than upon judgment.

In the first case the investor uses due diligence to see that his money is reasonably safe; in the second instance, the speculator is principally concerned with how big a profit he can make in the shortest possible time.

The defendant, Jacob Ernstof, did not go to Florida for his health, nor for the purpose of any conservative investment, but rather went to the land of endless beaches and perpetual sunshine with the hope of bringing back to Rhode Island whatever profit, whether in actual money or securities, fortune might cast his way. The evidence shows that with the "boom" in full swing, the defendants, in September, 1925, saw fit to buy 1,600 acres of land at $80 an acre; in other words, they chose to incur an obligation of $128,000 without even taking the trouble of seeing for themselves whether what they were buying was in existence or not. This action concerns one of three promissory notes, each for $18,000 signed by Jacob Ernstof and through him by Maurice Bliss, secured by a second mortgage on real estate, payable one, two and three years from September 2, 1925, as part payment for the land in question. The defendants contest liability on the ground that they were induced to make this purchase through the false representations of the plaintiff as to the kind and character of the land which it sold to them.

Whether or not any false representations were actually made, what those representations consisted of, and whether or not the defendant, Ernstof, acting for himself and his friend, Bliss, placed any reliance upon any statements which the plaintiff may have made at the time that the contract was entered into, were questions peculiarly within the province of the jury to consider and determine. To quote any particular bit of testimony, or to single out any isolated instance or instances to prove the existence or non-existence of any determinative fact serves no useful purpose, for the record, interpreted in the light of the infective speculative spirit then prevailing, must be considered in its entirety to get a true picture of what the defendants meant and hoped to do. Two things, however, stand out in relief over all the other testimony. At no time did Ernstof take the trouble of going out to see the land for himself although he was going to risk $128,000 in the venture; and, more important still, even before he exercised his option to purchase the land, he had agreed to sell 320 acres at $125 an acre which would give him an estimated profit of over 56% per acre. These two facts are indicative of a speculative mind in which reason, temporarily at least, has been overcome by a desire for gain.

Throughout the entire transaction the defendants' conduct is more in accord with the actions of one who, having received a temporary setback, fondles the hope that his apparent misadventure will ultimately result profitably, than with the conduct of one who has been deceived by the improper representations of another. To the repeated communications from the plaintiff the defendants replied with excuses or promises of future performance or else remained silent altogether. At no time before the actual trial of this case did they by word or action indicate that any misconduct of the plaintiff had led them into the predicament in which they found themselves. The defendants' attorney skilfully attempted to avoid the effect produced by such conduct by arguing that because the notes involved were negotiable instruments, his clients did not disclose their complaint against the plaintiff until the period during which the last of the three notes could be transferred to a bona fide purchaser for value had expired. This argument while ingenious is not con-

vincing. There are well known effective legal methods to prevent the transfer of a negotiable instrument secured by a real estate mortgage which has been obtained through fraud or misrepresentation. This the defendants did not do although they had consulted a Florida attorney. It is rather to the plaintiff's credit that it did not attempt to inject into its controversy with the defendants the rights of a third party by any manipulation of the mortgage and note.

The plaintiff, an established real estate firm of Florida, was willing to submit its dealings with one of our citizens to the judgment of our own courts. The facts might reasonably lead to different conclusions. It was fundamentally a question of veracity. The jury saw fit to believe the plaintiff. This Court cannot say that it was not justified in so doing. Disillusion cannot excuse previous absence of foresight. The jury's verdict is sustained.

Motion for new trial denied.

For plaintiff: Swan, Keeney & Smith.

For defendants: Philip C. Joslin and McGovern & Slattery.